**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE PETERSMARCK, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 14-cv-03726 |
| v. | ) ) | Hon. Elaine E. Bucklo |
| SERCO GLOBAL SERVICES LLC, a Pennsylvania company limited liability company, APRIA HEALTHCARE GROUP, INC., a Delaware corporation, APRIA HEALTHCARE LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Stephanie Petersmarck ("Plaintiff") brings this first amended class action complaint against Defendant Apria Healthcare Group, Inc. and Defendant Apria Healthcare LLC (together, "Apria"), and Defendant Serco Global Services LLC ("Serco") to stop Defendants' unlawful business practice of placing unauthorized telephone calls to consumers using an automatic telephone dialing system and/or a prerecorded or artificial voice and to stop Defendants' unlawful business practice of billing for and attempting to collect payment from consumers, pursuant to Apria's automatic product refill programs into which Apria enrolled consumers without their authorization, approval, agreement, or consent. Plaintiff seeks redress on her own behalf and on behalf of all similarly situated persons injured by Defendants' misconduct. For her first amended class action complaint, Plaintiff alleges as follows upon personal knowledge, as to

herself and her own acts and experiences, and upon information and belief, including investigation conducted by her attorneys, as to all other matters.

## NATURE OF THE ACTION

1.      In an effort to increase the profits earned from Apria's home medical device and supply business, Defendants violated federal law by making unauthorized and unsolicited telephone calls using an automatic telephone dialing system and/or a prerecorded or artificial voice ("robocalls") to the telephones of individual consumers throughout the nation.

2.      By making or causing to be made these unsolicited robocalls, Defendants caused actual harm to the consumer recipients of their calls. Among other things, Defendants' misconduct subjects consumers to the aggravation that necessarily accompanies unsolicited calls – particularly calls using a prerecorded or artificial voice – and often forces consumers to pay their phone service providers for the receipt of such calls, even though Defendants make the unsolicited calls in violation of specific legislation on the subject.

3.      To redress these injuries, Plaintiff, on behalf of herself and a nationwide class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), which protects the privacy right of consumers to be free from receiving unsolicited telephone calls using a prerecorded or artificial voice.

4.      On behalf of the proposed TCPA Class, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized telephone calls, including all unauthorized calls utilizing a prerecorded or artificial voice and/or placed with an automated telephone dialing system, as that term is defined in 47 U.S.C. § 227(a)(1), and an award to the class members of statutory damages, costs, and attorneys' fees.

5.      In a further attempt to increase the profits it earns from its home medical device and supply business, without consumers knowledge or consent, Apria enrolls consumers in automatic product or supply refill programs and continues to charge and bill consumers for those supplies, in spite of consumers' requests to Apria that it cease ordering or delivering supplies to them and cease billing the consumers for those supplies.  Furthermore, Apria, itself and through its agents, attempts to and does collect its fraudulent charges from consumers, after consumers inform Apria that its charges are unauthorized and invalid.

6.      In order to redress these injuries, Plaintiff, on behalf of herself and a subclass of similarly situated Illinois consumers (the "Illinois Subclass"), brings suit under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (the "ICFA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 801, et seq. (the "FDCPA"), both of which protect consumers from fraudulent billing and collection practices such as those used by Apria and Serco.

7.      On behalf of the proposed Illinois Subclass, Plaintiff seeks an award to the class members of actual and statutory damages, together with costs and attorneys' fees permitted by applicable statutes.

## JURISDICTION AND VENUE

8.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises in part under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 and in part under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 801, *et seq*.

9.     This Court has personal jurisdiction over the Defendants because Defendants do business in this District and nationwide and sent the unauthorized calls and bills to Plaintiff within this District.

10.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendants transact business in this District, and a substantial part of the events concerning the unauthorized calls at issue occurred in this District, as Plaintiff received Defendants' unauthorized calls within this District.

**PARTIES**

11.     Plaintiff Stephanie Petersmarck is a citizen of the State of Illinois and a resident of Chicago, Illinois.

12.     Defendant Serco Global Services, LLC is an operator of call centers and debt collection for third-parties including Defendants Apria.  Serco is a Pennsylvania limited liability company with its principal place of business located in Pennsylvania. Serco operates by and through its parent Serco Group PLC, an England and Wales public limited company.

13.     Defendant, Apria Healthcare Group, Inc., is a nationwide purveyor of home medical advices and supplies.  Apria Healthcare Group, Inc. is a Delaware corporation with its principal place of business located in Lake Forest, California.   Apria Healthcare Group, Inc. conducts business in Illinois, including in this District, and elsewhere throughout the United States. Apria Healthcare Group, Inc. is the managing member of co-Defendant Apria Healthcare LLC. Apria Healthcare Group, Inc. operates through a number of fully-owned subsidiaries and agents and all references herein to "Apria" include collectively those subsidiaries and agents.

14.     Defendant, Apria Healthcare LLC, is a nationwide purveyor of home medical advices and supplies.  Apria Healthcare LLC is a Delaware limited liability company with its principal place of business located in Lake Forest, California.  Apria Healthcare LLC is registered and conducts business in Illinois, including in this District, and conducts business elsewhere throughout the United States.  Apria Healthcare LLC operates through a number of fully-owned subsidiaries and agents, and all references herein to "Apria" include collectively those subsidiaries and agents.

### COMMON ALLEGATIONS OF FACT

15.     Apria is a nationwide provider of home medical advices and supplies, and claims that it is one of the nation's leading providers of home respiratory services and related medical equipment.

16.     As an ordinary business practice, during its initial contacts with consumers, Apria collects telephone numbers from consumers who purchase medical devices such as continuous positive airway pressure ("CPAP") machines and BiLevel machines for the treatment of sleep apnea, to facilitate the proper use by consumers of those devices or machines.

17.     As an ordinary business practice, Apria enrolls consumers who purchase or rent medical devices from Apria in automatic refill agreements for or otherwise ships supplies related to those devices to consumers' former or current addresses without their consent, permission, agreement, or knowledge.

18.     When the consumers complain to Apria about the repeated shipment of unwanted supplies, Apria continues to bill and to try to collect payment for the unwanted supplies it ships to consumers' former or current addresses against their will.

5

19.     When the consumers demand to be removed from Apria's automatic refill programs or otherwise that Apria stop shipping supplies to consumers' former or current addresses, Apria continues to bill and to try to collect payment from consumers for the unwanted supplies.

20.     When the consumers collect and ship back to Apria the unwanted supplies Apria shipped to consumers' former or current addresses, Apria continues to bill and to try to collect payment from consumers for the unwanted supplies.

21.     After Apria agrees to remove consumers from Apria's automatic refill programs and otherwise not to ship supplies to consumers' former or current addresses, Apria continues to ship, bill, and to try to collect payment for unwanted supplies it ships to consumers' former or current addresses against their will.

22.     When the consumers refuse to pay Apria for its unwanted products and supplies, Apria engages Defendant Serco to use the phone numbers and former or current addresses consumers provided to Apria for the purpose of undertaking collection activity to harass and annoy consumers in an effort to obtain more money from those consumers.

23.     Even when consumers such as Plaintiff inform the collection agents of Apria and/or Serco that the amounts allegedly owed are not actually owed, Apria continues to ship more supplies to consumers' former or current addresses, bill consumers for those unwanted supplies, and make calls and robocalls to the consumer to attempt to collect more money from consumers.

24.     Toward the end of Defendants' robocalls and/or automated phone calls, Defendants' automated voice advises consumers they may press a key and Apria will stop calling.   In truth, pressing the identified key does not stop Defendants from calling.   Even after

consumers press the key Defendants' automation advises will cause Defendants to stop calling, Defendants continue to call the consumer without hesitation or interruption.

25.     In addition to being an aggravating invasion of privacy, unsolicited telephone calls utilizing a prerecorded or artificial voice and/or placed using an automated telephone dialing system may cause recipient consumers to incur additional costs to third-parties.  Often, consumers must pay or incur a usage allocation deduction from to their cellular calling plans as a result of having received Defendants' robocalls, regardless of whether or not the call was authorized.

**FACTS SPECIFIC TO PLAINTIFF**

26.     In or about September 2011, Plaintiff 's physician diagnosed her with sleep apnea and prescribed a CPAP machine to treat her sleep apnea.  In order to approve insurance coverage for a CPAP machine, Plaintiff's insurer required that she fill her prescription through Apria.

27.     On or about October 3, 2011, Plaintiff received a leased CPAP machine from Apria and an initial quantity of supplies for the machine.

28.     The machine proved to be ineffective, and Plaintiff stopped using the CPAP machine shortly thereafter.  Although Plaintiff, on information and belief, did not order additional supplies, Apria nonetheless shipped CPAP supplies to her several times a year.

29.     In or about December 2012, Plaintiff advised Apria she was not using the machine.

30.     Apria insisted to Plaintiff that its business policy was to continue to charge consumers monthly fees to lease the machine.

31.     Apria advised Plaintiff that its business policies were to continue to charge consumers to lease CPAP machines even after the consumer had paid amounts to Apria that exceeded the fair market purchase price of CPAP machines.

32.     Plaintiff advised Apria she would not continue to pay to lease the CPAP.

33.     Plaintiff also advised Apria that she understood from her former neighbors that Apria had been shipping boxes to Plaintiff's former address.

34.     Plaintiff told Apria she no longer resided at that former address and to stop sending anything to that address.  Apria agreed it would stop.

35.     Apria asked Plaintiff to provide her current address.

36.     Plaintiff refused to provide her home address and told Apria the reason she refused was to ensure Apria did not continue to ship any products, supplies, or communications to her against her will.

37.     Plaintiff advised Apria it should transmit any communications to Plaintiff's work address.

38.     Plaintiff endeavored to return the CPAP machine to Apria.

39.     Plaintiff asked Apria to what address she could ship the CPAP for return to Apria, so that Apria would stop billing Plaintiff for any amounts related to the CPAP.

40.     In response, Apria said it would not charge Plaintiff any more money as a result of the CPAP.

41.     Despite its agreement and knowing Plaintiff was not using the CPAP machine and was not in need of any supplies therefore, Apria continued to send shipments and

communications to Plaintiff at her former address.   In fact, Apria increased the frequency with which it shipped supplies to Plaintiff's former address.

42.     Plaintiff went to her former address and collected the remaining Apria shipments.

43.     Plaintiff contacted Apria many times before Apria finally agreed to permit Plaintiff to return to Apria the boxes it had continued to ship to her former address and credit Plaintiff for any amounts it attempted to charge her for those shipments.

44.     Rather than providing Plaintiff an address, Apria insisted on transmitting shipping labels to Plaintiff for return to Apria of its shipments.

45.      Upon receipt of those labels, Plaintiff packaged up the shipments from Apria she was able to collect, placed the labels on the boxes, and gave the boxes to the delivery company for return to Apria.

46.     Nonetheless, Apria failed to credit Plaintiff's account and endeavored to collect the amounts that Plaintiff would not pay for the supplies that she did not want.

47.     Beginning in 2012 and continuing unabated, Defendants began to call Plaintiff in attempts to collect the fraudulent debt for the CPAP supplies.

48.     On several occasions in 2013 and 2014, Defendants called Plaintiff using an automated and prerecorded voice from an interactive response machine containing several prompts to input a number on her phone.  On each such occasion, Plaintiff pressed the button indicating that she did not want to be contacted at that number by Apria.

49.     On several other occasions, Plaintiff wrote or spoke directly to Apria's agents and informed them of the wrongful billing and that she disputed the alleged debts Apria was

attempting to collect. Despite multiple promises from Apria, Apria did not stop shipping the supplies, and did not stop the collection calls.

50.     For example, on or about March 25, 2013, Plaintiff wrote to her healthcare insurer to complain about Apria's billing and collection practices. Subsequent phone discussions between Plaintiff and Apria's customer service agents confirmed that Apria was aware of the communication.

51.     On May 6, 2013, Plaintiff spoke with Apria's customer service agents by phone. On the phone, Apria's agents acknowledged that she had never enrolled in Apria's automatic supply program and assured Plaintiff that she had now been "disenrolled" in Apria's automatic supply program. Despite such assurance, Apria continued to ship supplies to Plaintiff, to bill Plaintiff for such supplies, and to make phone calls to Plaintiff attempting to collect on such bills.

52.     On several occasions when Plaintiff did not answer Apria's phone calls, Apria left voice mail messages. All of the messages left for Plaintiff were prerecorded, featuring a non-human "artificial" voice.

53.     On May 8, 2013, Plaintiff wrote directly to Apria, spelling out the previous conversations between Plaintiff and Apria and asking Apria, yet again, to stop sending her supplies and to stop billing her for supplies and attempting to collect for unpaid supplies.

54.     On May 23, 2013, Plaintiff again wrote to Apria to express her disapproval and to ask once again for Apria to correct its errors.

55.     Apria did not respond in any way to Plaintiff's repeated written communications.

56.     Upon information and belief, Defendants place calls, including the calls made to Plaintiff, *en masse* using a "predictive" dialer, which automatically places calls without human intervention until the called party answers the call, at which time the automatic dialer attempts to connect the called party with a human representative.

57.     Since Defendants began making prerecorded or interactive response calls to Plaintiff, Plaintiff has had her privacy invaded by Defendants on a continuous basis, receiving the same or similar telephone calls from a prerecorded or artificial voice on scores of occasions over many months.

58.     Plaintiff repeatedly informed Apria's customer service department that the calls to her were in error and requested that Apria stop calling her.  However, Plaintiff's complaints were repeatedly ignored by Apria, and Defendants' unauthorized robocalls continued unabated.

59.     At no time did Plaintiff sign up to receive Apria's phone calls, and at no time did Plaintiff provide Apria or Serco with consent to receive any telephone calls, including any prerecorded or artificial voice calls, from Apria.  Furthermore, Plaintiff repeatedly requested that Apria stop such calls, to no avail.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on behalf of herself, a nationwide class of similarly situated individuals (the "Nationwide Called Party Class" or "Class"), and an Illinois Subclass defined as follows:

i.      Nationwide Called Party Class: All persons in the United States and its territories who received one or more telephone calls from or on behalf of Defendants featuring a prerecorded or artificial voice where the called party did not consent to receiving the call; and

    ii.    Illinois Subclass: All persons in Illinois who were enrolled without their explicit authorization in a program for the automatic refill of supplies relating to medical devices sold, rented or leased to them by Apria.

61.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and the Illinois Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and the Illinois Subclass, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class or the Illinois Subclass.

62.    Absent a class action, most members of the Class and the Illinois Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

63.    Apria and Serco have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class and the Illinois Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and the Illinois Subclass.

64.    The factual and legal bases of Apria's and Serco's liability to Plaintiff and to the other members of the Class and the Illinois Subclass are the same, resulting in injury to the Plaintiff and to all of the other members of the Class and the Illinois Subclass. Plaintiff and the other members of the Class and the Illinois Subclass have all suffered harm and damages as a result of Apria's and Serco's unlawful and wrongful conduct.

12

65.     Upon information and belief, there are thousands of members of the Class and hundreds or thousands of members of the Illinois Subclass such that joinder of all members is impracticable.

66.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and the Illinois Subclass, and those questions predominate over any questions that may affect individual members of the Class or Illinois Subclass.  Common questions for the Class include, but are not limited to, the following:

(a)     Did Defendants systematically place calls using a prerecorded or artificial voice to persons that did not previously provide Defendants with consent, or had revoked consent, to call their respective telephone numbers?

(b)     Did Defendants systematically continue to place calls using a prerecorded or artificial voice to persons who communicated to Defendants that they did not consent to receive such calls from Defendants?

(c)     Did the calls made by Defendants using a prerecorded or artificial voice violate the called parties' respective rights to privacy?

(d)     Was Defendants' conduct in violation of the TCPA willful such that the Class members are entitled to treble damages?

(e)     Should Defendants be enjoined from engaging in such conduct in the future?

67.     Common Questions for the Illinois Subclass include, but are not limited to, the following:

(a)     Did Apria systematically enroll Illinois consumers in a program to automatically send such consumers supplies for their medical devices without the consent or authorization of such consumers?

(b)     Did Apria systematically send bills to such consumers to collect for the medical supplies that the consumers had never requested?

(c)     Have Defendants wrongfully engaged in collection activity relating to the medical supplies wrongfully sent to the members of the Illinois Subclass?

13

## COUNT I
### (Telephone Consumer Protection Act (47 U.S.C. 227)
### on behalf of the nationwide Class)

68.     Plaintiff incorporates by reference all foregoing paragraphs if set forth fully herein.

69.     Defendants made unsolicited and unauthorized telephone calls utilizing a prerecorded or artificial voice and/or placed using an automatic telephone dialing system to the telephone numbers of Plaintiff and the other members of the nationwide Class.

70.     Defendants have, therefore, violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

71.     As a result of Defendants' illegal conduct, the members of the Class have had their privacy rights violated, have suffered statutory and actual damages, and, under 47 U.S.C. §227(b)(3)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

72.     Defendants' misconduct was willful and knowing, and the Court should, pursuant to § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## COUNT II
### (Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 ILCS § 5/1-101, *et seq.*) on behalf of the Illinois Subclass)

73.     Plaintiff incorporates by reference all foregoing paragraphs as if set forth fully herein.

14

74.     Apria fraudulently and without consent enrolled Illinois consumers in automatic billing arrangements for Apria's products, and then billed those same Illinois consumers for those products.

75.     Apria and its agents, including Serco, furthermore engaged in unfair or deceptive practices in attempting to collect on the bills sent in furtherance of those unconsented, fraudulent bills.

76.     Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade or commerce, as described above.

77.     Defendants have, therefore, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 5/1-101, *et seq.*

78.     Defendants made unsolicited and unauthorized telephone calls using a prerecorded or artificial voice to the telephone numbers of Plaintiff and the other members of the nationwide Class.

79.     As a result of Defendants' illegal conduct, the members of the Class suffered actual damages and, under 815 ILCS § 5/10(a), Plaintiff requests all relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to injunctive relief, actual damages, punitive damages and any other relief which the Court deems proper.

**COUNT III**
**(Fair Debt Collection Practices Act**
**(15 U.S.C. § 801, *et seq.*) on behalf of the Illinois Subclass)**

80.     Plaintiff incorporates by reference all foregoing paragraphs as if set forth fully herein.

15

81.     Apria fraudulently and without consent enrolled Illinois consumers in automatic billing arrangements for Apria's products, and then billed those same Illinois consumers for those products.

82.     In billing for those unwanted products, Apria and its agents, including Serco, repeatedly ignored communications from consumers that said consumers refused to pay the asserted debts and that the consumers wished Defendants to cease further communications with the consumer.

83.     Defendants' refusal to honor the consumers' requests to cease communications violates the Fair Debt Collection Practices Act, 15 U.S.C. § 805(c).

84.     As a result of Defendants' illegal conduct, the members of the Illinois Subclass suffered actual and statutory damages and, under 15 U.C.S § 813, are entitled to actual damages, injunctive relief, and the additional damages listed in 15 U.S.C. § 813(a)(1)(B), along with costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff, on behalf of herself and the Class and Illinois Subclass, prays for the following relief:

1.     An order certifying the Class and the Illinois Subclass as defined above;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants to cease all unauthorized collection and prerecorded telephone activities;

4.     An award of reasonable attorneys' fees and costs;

5.     Such further and other relief as the Court deems reasonable and just.

16

**JURY DEMAND**

Plaintiff request trial by jury of all claims that can be so tried.

Dated:  June 18, 2014

STEPHANIE PETERSMARCK, individually and on behalf of a class of similarly situated individuals

/s/ Michael J. McMorrow

One of her attorneys

Michael J. McMorrow
MᴄMᴏʀʀᴏᴡ Lᴀᴡ, P.C.
One North LaSalle Street, 44th Floor
Chicago, IL  60602
Tel:  (312) 265-0708
mike@mjmcmorrow.com

Evan M. Meyers
MᴄGᴜɪʀᴇ Lᴀᴡ, P.C.
161 N. Clark Street, 47th Floor
Chicago, IL  60601
Tel:  (312) 216-5179
emeyers@mcgpc.com

17