FILED
7/28/2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE PETERSMARCK, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 14-cv-03726 |
| v. | ) ) | Hon. Elaine E. Bucklo |
| APRIA HEALTHCARE GROUP, INC., a Delaware corporation, APRIA HEALTHCARE LLC, a Delaware limited liability company, | ) ) ) ) | |
| *Defendants*. | ) ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Stephanie Petersmarck ("Plaintiff") brings this second amended class action complaint against Defendant Apria Healthcare Group, Inc. and Defendant Apria Healthcare LLC (together, "Apria" or "Defendants") to stop Defendants' unlawful business practice of billing for and attempting to collect payment from consumers, pursuant to Apria's automatic product refill programs into which Apria enrolled consumers without their authorization, approval, agreement, or consent. Plaintiff seeks redress on her own behalf and on behalf of all similarly situated persons in Illinois injured by Defendants' misconduct. For her second amended class action complaint, Plaintiff alleges as follows upon personal knowledge, as to herself and her own acts and experiences, and upon information and belief, including investigation conducted by her attorneys, as to all other matters.

**NATURE OF THE ACTION**

1.      In an effort to increase the profits earned from Apria's home medical device and supply business, without consumers knowledge or consent, Apria enrolls consumers in automatic product or supply refill programs and continues to charge and bill consumers for those supplies, in spite of consumers' requests to Apria that it cease ordering or delivering supplies to them and cease billing the consumers for those supplies. Furthermore, Apria, itself and through its agents, attempts to and does collect its fraudulent charges from consumers, after consumers inform Apria that its charges are unauthorized and invalid.

2.      In order to redress these injuries, Plaintiff, on behalf of herself and a class of similarly situated Illinois consumers (the "Class"), brings suit under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (the "ICFA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 801, et seq. (the "FDCPA"), both of which protect consumers from fraudulent billing and collection practices such as those used by Apria.

3.      On behalf of the proposed Class, Plaintiff seeks an award to the class members of actual and statutory damages, together with costs and attorneys' fees permitted by applicable statutes.

**JURISDICTION AND VENUE**

4.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises in part under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 801, *et seq.*

5.    This Court has personal jurisdiction over the Defendants because Defendants do business in this District and nationwide and sent the unauthorized calls and bills to Plaintiff within this District.

6.    Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendants transact business in this District, and a substantial part of the events concerning the unauthorized calls at issue occurred in this District, as Plaintiff received Defendants' unauthorized calls within this District.

## PARTIES

7.    Plaintiff Stephanie Petersmarck is a citizen of the State of Illinois and a resident of Chicago, Illinois.

8.    Defendant Apria Healthcare Group, Inc., is a nationwide purveyor of home medical advices and supplies.  Apria Healthcare Group, Inc. is a Delaware corporation with its principal place of business located in Lake Forest, California.  Apria Healthcare Group, Inc. conducts business in Illinois, including in this District, and elsewhere throughout the United States.  Apria Healthcare Group, Inc. is the managing member of co-Defendant Apria Healthcare LLC. Apria Healthcare Group, Inc. operates through a number of fully-owned subsidiaries and agents and all references herein to "Apria" include collectively those subsidiaries and agents.

9.    Defendant Apria Healthcare LLC, is a nationwide purveyor of home medical advices and supplies.  Apria Healthcare LLC is a Delaware limited liability company with its principal place of business located in Lake Forest, California.   Apria Healthcare LLC is registered and conducts business in Illinois, including in this District, and conducts business elsewhere throughout the United States.  Apria Healthcare LLC operates through a number of

3

fully-owned subsidiaries and agents, and all references herein to "Apria" include collectively those subsidiaries and agents.

## COMMON ALLEGATIONS OF FACT

10.     Apria is a nationwide provider of home medical advices and supplies, and claims that it is one of the nation's leading providers of home respiratory services and related medical equipment.

11.     As an ordinary business practice, during its initial contacts with consumers, Apria collects telephone numbers from consumers who purchase medical devices such as continuous positive airway pressure ("CPAP") machines and BiLevel machines for the treatment of sleep apnea, to facilitate the proper use by consumers of those devices or machines.

12.     As an ordinary business practice, Apria enrolls consumers who purchase or rent medical devices from Apria in automatic refill agreements for or otherwise ships supplies related to those devices to consumers' former or current addresses without their consent, permission, agreement, or knowledge.

13.     When the consumers complain to Apria about the repeated shipment of unwanted supplies, Apria continues to bill and to try to collect payment for the unwanted supplies it ships to consumers' former or current addresses against their will.

14.     When the consumers demand to be removed from Apria's automatic refill programs or otherwise that Apria stop shipping supplies to consumers' former or current addresses, Apria continues to bill and to try to collect payment from consumers for the unwanted supplies.

4

15.     When the consumers collect and ship back to Apria the unwanted supplies Apria shipped to consumers' former or current addresses, Apria continues to bill and to try to collect payment from consumers for the unwanted supplies.

16.     After Apria agrees to remove consumers from Apria's automatic refill programs and otherwise not to ship supplies to consumers' former or current addresses, Apria continues to ship, bill, and to try to collect payment for unwanted supplies it ships to consumers' former or current addresses against their will.

17.     When the consumers refuse to pay Apria for its unwanted products and supplies, Apria engages its agents to use the phone numbers and former or current addresses consumers provided to Apria for the purpose of undertaking collection activity to harass and annoy consumers in an effort to obtain more money from those consumers.

18.     Even when consumers such as Plaintiff inform the collection agents of Apria that the amounts allegedly owed are not actually owed, Apria continues to ship more supplies to consumers' former or current addresses, bill consumers for those unwanted supplies, and attempts to collect more money from consumers.

## FACTS SPECIFIC TO PLAINTIFF

19.     In or about September 2011, in order to approve insurance coverage for a CPAP machine, Plaintiff's insurer required that she fill her prescription through Apria.

20.     On or about October 3, 2011, Plaintiff received a leased CPAP machine from Apria and an initial quantity of supplies for the machine.

21.     Although Plaintiff, on information and belief, did not order additional supplies, Apria nonetheless shipped CPAP supplies to her several times a year.

22.     In or about December 2012, Plaintiff advised Apria she was not using the machine and did not want Apria to continue to charge her for its use.

23.     Apria insisted to Plaintiff that its business policy was to continue to charge consumers monthly fees to lease the machine.

24.     Apria advised Plaintiff that its business policies were to continue to charge consumers to lease CPAP machines even after the consumer had paid amounts to Apria that exceeded the fair market purchase price of CPAP machines.

25.     Plaintiff advised Apria she would not continue to pay to lease the CPAP.

26.     In an effort to ensure Apria would stop charging Plaintiff for the CPAP or any related goods, Plaintiff attempted to return the CPAP to Apria.

27.     Plaintiff told Apria she would like to return the CPAP to Apria and asked Apria how she could return the machine to Apria.  Apria refused to provide Plaintiff with an address or location.

28.     Then, Apria agreed it would not charge Plaintiff any more money to lease the CPAP.

29.     Plaintiff told Apria not to send her any goods.

30.     Plaintiff advised Apria that she discovered Apria had been shipping packages to her former address.

31.     Plaintiff told Apria she no longer resided at that former address and to stop sending anything to that address.  Apria agreed it would stop.

32.     Apria asked Plaintiff to provide her current home address.

6

33.     Plaintiff refused to provide her home address. Plaintiff told Apria the reason she refused was to ensure Apria did not continue to ship any products, supplies, or communications to her against her will.

34.     Plaintiff advised Apria it should transmit any communications to Plaintiff's work address.

35.     Despite its agreement and knowledge that Plaintiff was not using the CPAP machine and and requested Apria not send her any more goods, Apria continued to send goods to Plaintiff at her former address.   In fact, Apria increased the frequency with which it shipped supplies to Plaintiff's former address.

36.     Plaintiff attempted to locate, collect, and return to Apria packages Apria sent to her former address.

37.     Plaintiff contacted Apria many times before Apria finally agreed to permit Plaintiff to return to Apria the packages it had continued to ship to her former address and credit Plaintiff for amounts it charged her for those shipments.

38.     Rather than providing Plaintiff an address, Apria insisted on transmitting to Plaintiff shipping labels for return her to use to return to Apria the packages it sent her.

39.      Upon receipt of those labels, Plaintiff packaged up the shipments from Apria she was able to collect, placed the labels on the boxes, and gave the boxes to the delivery company for return to Apria.

40.     Nonetheless, Apria failed to credit Plaintiff's account and endeavored to collect the amounts that Plaintiff would not pay for the supplies that she did not want.

41.     Beginning in 2012 and continuing unabated, Defendant attempted to collect the fraudulent debt for the CPAP supplies.

42.     On several occasions in 2013 and 2014, Plaintiff wrote or spoke directly to Apria's agents and informed them of the wrongful billing and that she disputed the alleged debts Apria was attempting to collect.  Despite multiple promises from Apria, Apria did not stop shipping the supplies, and did not stop the collection calls.

43.     For example, on or about  May 6, 2013, Plaintiff spoke with Apria's customer service agents by phone.  On the phone, Apria's agents acknowledged that she had never enrolled in Apria's automatic supply program and assured Plaintiff that she had now been "disenrolled" in Apria's automatic supply program. Despite such assurance, Apria continued to ship supplies to Plaintiff, to bill Plaintiff for such supplies, and to make phone calls to Plaintiff attempting to collect on such bills.  Plaintiff repeatedly informed Apria's customer service department that the calls to her were in error and requested that Apria stop calling her.  However, Plaintiff's complaints were repeatedly ignored by Apria, and Defendants' collection calls and collection activity continued unabated.

44.     On May 8, 2013, Plaintiff wrote directly to Apria, spelling out the previous conversations between Plaintiff and Apria and asking Apria, yet again, to stop sending her supplies and to stop billing her for supplies and attempting to collect for unpaid supplies.

45.     On May 23, 2013, Plaintiff again wrote to Apria to express her disapproval and to ask once again for Apria to correct its errors.

46.     Apria did not respond in any way to Plaintiff's repeated written communications.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of herself and a class of similarly situated Illinois residents (the "Class") defined as follows:

> All persons in Illinois who were enrolled without their explicit authorization in a program for the automatic refill of supplies relating to medical devices sold, rented or leased to them by Apria.

48.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.  Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

49.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

50.     Apria has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

51.     The factual and legal bases of Apria's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other

members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Apria's unlawful and wrongful conduct.

52. Upon information and belief, there hundreds or thousands of members of the Class such that joinder of all members is impracticable.

53. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    (a)    Did Apria systematically enroll Illinois consumers in a program to automatically send such consumers supplies for their medical devices without the consent or authorization of such consumers?

    (b)    Did Apria systematically send bills to such consumers to collect for the medical supplies that the consumers had never requested?

    (c)    Have Defendants wrongfully engaged in collection activity relating to the medical supplies wrongfully sent to the members of the Illinois Subclass?

**COUNT I**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS § 5/1-101, *et seq.*)**

54. Plaintiff incorporates by reference all foregoing paragraphs as if set forth fully herein.

55. Apria fraudulently and without consent enrolled Illinois consumers in automatic billing arrangements for Apria's products, and then billed those same Illinois consumers for those products.

56. Apria and its agents furthermore engaged in unfair or deceptive practices in attempting to collect on the bills sent in furtherance of those unconsented, fraudulent bills.

10

57.     Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade or commerce, as described above.

58.     Defendants have, therefore, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 5/1-101, *et seq.*

59.     As a result of Defendants' illegal conduct, the members of the Class suffered actual damages and, under 815 ILCS § 5/10(a), Plaintiff requests all relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to injunctive relief, actual damages, punitive damages and any other relief which the Court deems proper.

## COUNT II
### Fair Debt Collection Practices Act
### (15 U.S.C. § 801, *et seq.*)

60.     Plaintiff incorporates by reference all foregoing paragraphs as if set forth fully herein.

61.     Apria fraudulently and without consent enrolled Illinois consumers in automatic billing arrangements for Apria's products, and then billed those same Illinois consumers for those products.

62.     In billing for those unwanted products, Apria and its agents, repeatedly ignored communications from consumers that said consumers refused to pay the asserted debts and that the consumers wished Defendants to cease further communications with the consumer.

63.     Defendants' refusal to honor the consumers' requests to cease communications violates the Fair Debt Collection Practices Act, 15 U.S.C. § 805(c).

11

64.     As a result of Defendants' illegal conduct, the members of the Class suffered actual and statutory damages and, under 15 U.C.S § 813, are entitled to actual damages, injunctive relief, and the additional damages listed in 15 U.S.C. § 813(a)(1)(B), along with costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.     An order certifying the Class as defined above;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants to cease all unauthorized collection activities;

4.     An award of reasonable attorneys' fees and costs;

5.     Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff request trial by jury of all claims that can be so tried.

Dated:  July 23, 2015

STEPHANIE PETERSMARCK, individually and on behalf of a class of similarly situated individuals

/s/ Michael J. McMorrow

    One of her attorneys

Michael J. McMorrow
MCMORROW LAW, P.C.
One North LaSalle Street, 44th Floor
Chicago, IL  60602
Tel:  (312) 265-0708
mike@mjmcmorrow.com

Evan M. Meyers
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel:  (312) 893-7002
emeyers@mcgpc.com